IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LARRY WAYNE HEBERT,
    Petitioner,

vs.                                     Case No.:  3:11cv37/MCR/EMT

KENNETH S. TUCKER,
    Respondent.
_____/

**REPORT AND RECOMMENDATION**

      This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 10).  Respondent filed an answer and relevant portions of the state court record (docs. 37, 42).  Petitioner filed a reply (doc. 47).

      The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.     BACKGROUND AND PROCEDURAL HISTORY

      The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 37, 42).[1]  Petitioner was charged in the Circuit Court in and for Escambia County, Florida, Case No. 2006-CF-004079, with one count of grand theft of property valued at $5,000 or more but less than $10,000 (Count 1), two counts of grand theft of property valued at $300 or more but less than $5,000 (Counts 2 and 3), three counts of contracting without a license during

---

[1] Hereinafter all citations to the state court record refer to the exhibits to Respondent's answer (docs. 37, 42). If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

a state of emergency (Counts 4–6), and three counts of unpermitted construction work (Counts 7–9) (Ex. A at 3–5).  Following a jury trial on Counts 1, 4, and 7, he was found guilty of grand theft of property valued at $300 or more but less than $5,000, a lesser included offense of Count 1, contracting without a license during a state of emergency as charged in Count 4, and performing unpermitted construction work as charged in Count 7 (Ex. A at 25, Ex. B).[2]  On March 14, 2007, Petitioner was adjudicated guilty and sentenced to concurrent terms of five (5) years of imprisonment on Counts 1 and 4, with pre-sentence jail credit of 31 days, and time served on Count 7 (Ex. A at 27–59).  The court subsequently modified the sentence to concurrent terms of five (5) years of probation on Counts 1 and 4.[3]

Petitioner appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D07-1964 (Ex. A at 140, Ex. H).  The First DCA affirmed the judgment on December 22, 2009 (Ex. O).  Hebert v. State, 25 So. 3d 612 (Fla. 1st DCA 2009).  Petitioner petitioned for review in the Florida Supreme Court, Case No. SC10-103, based upon the court's discretionary jurisdiction to resolve express and direct conflicts in the district courts of appeal, pursuant to Rule 9.030(2)(A) of the Florida Rules of Appellate Procedure (Ex. P).  On April 22, 2010, the Florida Supreme Court issued an order declining to accept jurisdiction and denying the petition for review (Ex. R).  Hebert v. State, 36 So. 3d 655 (Fla. 2010) (Table).

Petitioner filed the instant federal habeas action on April 26, 2011 (doc. 10).  Respondent concedes the habeas petition is timely (doc. 37 at 9).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

---

[2] Prior to trial, Counts 2, 3, 5, 6, 8, and 9 were severed.  Petitioner subsequently pleaded guilty to Counts 5 and 6, and the State nolle prosed Counts 2, 3, 8, and 9.  Petitioner's § 2254 petition raises only one claim of error, which relates solely to the judgment of conviction as to Counts 1, 4, and 7 (see doc. 10 at 4; doc. 10-1 at 8).  Therefore, this Background and Procedural History section includes information relevant only to Counts 1, 4, and 7.

[3] On November 24, 2010, Petitioner pleaded nolo contendere to a charge of violation of probation.  He was sentenced to concurrent terms of five (5) years of imprisonment (see doc. 37 at 8).

Case No. 3:11cv37/MCR/EMT

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[4] The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[4] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13). The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87, 178 L. Ed. 2d 624 (2011)). The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it. *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786). Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless

objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.,* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

Within this framework, the court will review Petitioner's claim.

III. PETITIONER'S CLAIM

Ground One: "The Florida courts denied Petitioner's due process of law guaranteed by the United States Constitution."

Petitioner contends the First DCA's affirmance of his conviction for grand theft violated his due process rights, because the jury's general verdict could have been based upon either of two

theories, one of which was "legally invalid" under Florida law (doc. 10 at 4; doc. 10-1 at 5–9). He asserts the State's theory of guilt on the grand theft charge was based upon either his conduct with regard to the repair of the victim's roof ("roofing job") or his conduct with regard to the repair of solar panels on that roof ("solar panels job") (*id.*). Petitioner contends the "roofing job" theory was a "legally invalid" theory, because the evidence showed only shoddy construction work, which is legally insufficient to satisfy the specific intent element of grand theft under Florida law (*id.*). He argues that because the jury's verdict could have been based upon this "legally invalid" theory, his conviction violates both Florida and federal law, specifically, San Martin v. State, 717 So. 2d 462 (Fla. 1998), Griffin v. United States, 502 U.S. 46 (1991), and Yates v. United States, 354 U.S. 298 (1957) (*id.*). Petitioner asserts he raised this claim on direct appeal of his conviction (doc. 10 at 4).

Respondent contends Petitioner never presented a federal constitutional argument to the state courts; rather, he argued his grand theft conviction violated Florida law (doc. 37 at 12). Respondent concedes Petitioner's motion for rehearing on direct appeal mentioned language from Supreme Court cases, but only to press the point that jurors cannot make legal distinctions, only factual ones (*id.*). Respondent argues this was insufficient to alert the First DCA to a federal basis for his claim (*id.*). Therefore, the claim is unexhausted and procedurally barred (*id.*). Respondent alternatively argues even if this court were to determine that Petitioner exhausted his claim, Petitioner presented only a state law claim in his § 2254 petition, arguing that the state court misconstrued Florida law in denying his claim (*id.* at 18–19). Respondent also argues Petitioner failed to demonstrate the state court's adjudication of his claim was contrary to or an unreasonable application of any controlling Supreme Court precedent (*id.* at 19–22).

In Petitioner's reply to Respondent's answer, he includes an additional argument that the jury instruction on grand theft misstated the law and confused and misled the jury, because it did not separate each of the four alternative theories of commission of the crime with the word "or" and instead separated only the last two theories with "or" (Ex. 47 at 4–7).[5]

---

[5] Florida's grand theft statute, section 812.014, provides in relevant part:

(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.

1.      Clearly Established Federal Law

Constitutional error occurs when a jury is instructed on alternative theories of guilt and returns a verdict that may rest on a legally invalid theory. *See* Yates v. United States, 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957), *overruled on other grounds by* Burks v. United States, 437 U.S. 1, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978). However, a general verdict may be upheld where the jury is instructed on alternative theories of guilt, even if one but not all of the particular theories charged is factually inadequate, that is, there is insufficient evidence to support a conviction on one, but not every, ground charged. *See* Griffin v. United States, 502 U.S. 46, 58–59, 112 S. Ct. 466, 116 L. Ed. 2d 371 (1991). In Griffin, the Supreme Court thoroughly explained the difference between the two holdings:

> . . . Yates involved a single-count federal indictment charging a conspiracy "(1) to advocate and teach the duty and necessity of overthrowing the Government of the United States by force and violence, and (2) to organize, as the Communist Party of the United States, a society of persons who so advocate and teach." *Id.*, at 300, 77 S. Ct. at 1067. The first of these objects (the "advocacy" charge) violated § 2(a)(1) of the Smith Act of 1940 (subsequently repealed and substantially reenacted as 18 U.S.C. § 2385), and the second of them (the "organizing" charge) violated § 2(a)(3). We found that the "organizing" object was insufficient in law, since the statutory term referred to initial formation, and the Communist Party had been "organized" in that sense at a time beyond the period of the applicable statute of limitations. 354 U.S. at 304–11, 77 S.Ct. at 1069–73. We then rejected the Government's argument that the convictions could nonetheless stand on the basis of the "advocacy" object. Our analysis made no mention of the Due Process Clause but consisted in its entirety of the following:
>
>> "In these circumstances we think the proper rule to be applied is that which requires a verdict to be set aside in cases where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. Stromberg v. California, 283 U.S. 359, 367–68 [51 S. Ct. 532, 535, 75 L. Ed. 1117]; Williams v. North Carolina, 317 U.S. 287, 291–92 [63 S. Ct. 207, 209–10, 87 L. Ed. 279]; Cramer v. United States, 325 U.S. 1, 36, n. 45 [65 S. Ct. 918, 935, n.45, 89 L. Ed. 1441]." *Id.*, at 312, 77 S. Ct. at 1073.

---

(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.

Fla. Stat. § 812.014(1)(a), (b) (2004).

Case No. 3:11cv37/MCR/EMT

None of the three authorities cited for that expansive proposition in fact establishes it. The first of them, <u>Stromberg v. California</u>, 283 U.S. 359, 51 S. Ct. 532, 75 L. Ed. 1117 (1931), is the fountainhead of decisions departing from the common law with respect to the point at issue here. That case, however—which does not explicitly invoke the Due Process Clause—does not sanction as broad a departure as the dictum in <u>Yates</u> expresses, or indeed even the somewhat narrower departure that the holding in <u>Yates</u> adopts. The defendant in <u>Stromberg</u> was charged in one count of violating a California statute prohibiting the display of a red flag in a public place for any one of three purposes: (a) as a symbol of opposition to organized government; (b) as an invitation to anarchistic action; or (c) as an aid to seditious propaganda. *Id.* at 361, 51 S. Ct. at 533. The jury was instructed that it could convict if it found the defendant guilty of violating any one purpose of the statute. *Id.* at 363–64, 51 S. Ct. at 533–34. A conviction in the form of a general verdict followed. The California appellate court upheld the conviction on the ground that, even though it doubted the constitutionality of criminalizing the first of the three purposes, the statute (and conviction) could be saved if that provision was severed from the statute. We rejected that:

> "As there were three purposes set forth in the statute, and the jury were [sic] instructed that their verdict might be given with respect to any one of them, independently considered, it is impossible to say under which clause of the statute the conviction was obtained. If any one of these clauses, which the state court has held to be separable, was invalid, it cannot be determined upon this record that the appellant was not convicted under that clause. . . . It follows that instead of its being permissible to hold, with the state court, that the verdict could be sustained if any one of the clauses of the statute were found to be valid, the necessary conclusion from the manner in which the case was sent to the jury is that, if any of the clauses in question is invalid under the Federal Constitution, the conviction cannot be upheld." *Id.* at 368, 51 S. Ct. at 535.

This language, and the holding of <u>Stromberg</u>, do not necessarily stand for anything more than the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground.

The same principle explains the other two cases relied on by <u>Yates</u>. In <u>Williams v. North Carolina</u>, 317 U.S. 287, 63 S. Ct. 207, 87 L. Ed. 279 (1942), the defendant was convicted of bigamous cohabitation after the jury had been instructed that it could disregard the defendants' Nevada divorce decrees on the ground either that North Carolina did not recognize decrees based on substituted service or that the

decrees were procured by fraud. *Id.* at 290–91, 63 S. Ct. at 209–10. The former of these grounds, we found, violated the Full Faith and Credit Clause. We continued:

> "[T]he verdict of the jury for all we know may have been rendered on that [unconstitutional] ground alone, since it did not specify the basis on which it rested. . . . No reason has been suggested why the rule of the Stromberg case is inapplicable here. Nor has any reason been advanced why the rule of the Stromberg case is not both appropriate and necessary for the protection of rights of the accused. To say that a general verdict of guilty should be upheld though we cannot know that it did not rest on the invalid constitutional ground on which the case was submitted to the jury, would be to countenance a procedure which would cause a serious impairment of constitutional rights." *Id.* at 292, 63 S. Ct. at 210.

The third case cited by Yates, Cramer v. United States, 325 U.S. 1, 65 S. Ct. 918, 89 L. Ed. 1441 (1945), was our first opportunity to interpret the provision of Article III, § 3, which requires, for conviction of treason against the United States, that there be "two Witnesses to the same overt Act." The prosecution had submitted proof of three overt acts to the jury, which had returned a general verdict of guilty. After a comprehensive analysis of the overt-act requirement, *id.* at 8–35, 65 S. Ct. at 922–35, we found that two of the acts proffered by the prosecution did not satisfy it, *id.* at 36–44, 65 S. Ct. at 935–39, and accordingly reversed the conviction. "Since it is not possible," we said, "to identify the grounds on which Cramer was convicted, the verdict must be set aside if any of the separable acts submitted was insufficient." *Id.* at 36, n. 45, 65 S. Ct. at 935, n. 45.[FN1]

> [FN1.] At the outset of its discussion of the two overt acts, the Cramer Court said: "At the present stage of the case we need not weigh their sufficiency as a matter of pleading. Whatever the averments might have permitted the Government to prove, we now consider their adequacy on the proof as made." 325 U.S. at 37, 65 S. Ct. at 936. Petitioner [Griffin] suggests this means that Cramer was a sufficiency-of-the-evidence case—a point relevant to our later analysis, *see infra*, at 473–74. That suggestion is mistaken. As is apparent from the Court's full discussion, "adequacy on the proof as made" meant not whether the evidence sufficed to enable an alleged fact to be found, but rather whether the facts adduced at trial sufficed in law to constitute overt acts of treason. Thus the Court could say: "It is not relevant to our issue to appraise weight or credibility of the evidence apart from determining its constitutional sufficiency." 325 U.S. at 43, 65 S. Ct. at 939. The Court of Appeals' opinion in

>Cramer makes even clearer that legal as opposed to evidentiary sufficiency was at issue; it specifically distinguishes the case from those in which multiple overt acts sufficient in law are submitted to the jury and the conviction is upheld as long as the evidence suffices to show one of them. *See* United States v. Cramer, 137 F.2d 888, 893–94 (2d Cir. 1943).

. . . .

>Our continued adherence to the holding of Yates is not at issue in this case. What petitioner seeks is an extension of its holding—an expansion of its expansion of Stromberg—to a context in which we have never applied it before. Petitioner cites no case, and we are aware of none, in which we have set aside a general verdict because one of the possible bases of conviction was neither unconstitutional as in Stromberg, nor even illegal as in Yates, but merely unsupported by sufficient evidence. If such invalidation on evidentiary grounds were appropriate, it is hard to see how it could be limited to those alternative bases of conviction that constitute separate legal grounds; surely the underlying principle would apply equally, for example, to an indictment charging murder by shooting or drowning, where the evidence of drowning proves inadequate. *See* Schad v. Arizona, 501 U.S. at 630–31, 111 S. Ct. at 2496–97). But petitioner's requested extension is not merely unprecedented and extreme; it also contradicts another case, postdating Yates, that in our view must govern here.

>Turner v. United States, 396 U.S. 398, 90 S. Ct. 642, 24 L. Ed. 2d 610 (1970), involved a claim that the evidence was insufficient to support a general guilty verdict under a one-count indictment charging the defendant with knowingly purchasing, possessing, dispensing, and distributing heroin not in or from the original stamped package, in violation of 26 U.S.C. § 4704(a) (1964 ed.). We held that the conviction would have to be sustained if there was sufficient evidence of distribution alone. We set forth as the prevailing rule: "[W]hen a jury returns a guilty verdict on an indictment charging several acts in the conjunctive, as Turner's indictment did, the verdict stands if the evidence is sufficient with respect to any one of the acts charged." *Id.* at 420, 90 S. Ct. at 654. *Cf.* United States v. Miller, 471 U.S. 130, 136, 105 S. Ct. 1811, 1815, 85 L. Ed. 2d 99 (1985).

. . . .

>. . . petitioner asserts that the distinction between legal error (Yates) and insufficiency of proof (Turner) is illusory, since judgments that are not supported by the requisite minimum of proof are invalid as a matter of law—and indeed, in the criminal law field at least, are constitutionally required to be set aside. *See* Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Insufficiency of proof, in other words, is legal error. This represents a purely semantical dispute. In one sense "legal error" includes inadequacy of evidence—namely, when the phrase is used as a term of art to designate those mistakes that it is the business of judges (in jury cases) and of appellate courts to

> identify and correct. In this sense "legal error" occurs when a jury, properly instructed as to the law, convicts on the basis of evidence that no reasonable person could regard as sufficient. But in another sense—a more natural and less artful sense—the term "legal error" means a mistake about the law, as opposed to a mistake concerning the weight or the factual import of the evidence. The answer to petitioner's objection is simply that we are using "legal error" in the latter sense.
>
> That surely establishes a clear line that will separate Turner from Yates, and it happens to be a line that makes good sense. Jurors are not generally equipped to determine whether a particular theory of conviction submitted to them is contrary to law—whether, for example, the action in question is protected by the Constitution, is time barred, or fails to come within the statutory definition of the crime. When, therefore, jurors have been left the option of relying upon a legally inadequate theory, there is no reason to think that their own intelligence and expertise will save them from that error. Quite the opposite is true, however, when they have been left the option of relying upon a factually inadequate theory, since jurors are well equipped to analyze the evidence, *see* Duncan v. Louisiana, 391 U.S. 145, 157, 88 S. Ct. 1444, 1451, 20 L. Ed. 2d 491 (1968).

502 U.S. at 52–58.

       2.      Federal Review of State Court Decision

The information charged Petitioner with violating Florida Statutes § 812.014(1)(a) and (b) and 812.014(2)(c)2 as follows:

> COUNT I: . . . **LARRY WAYNE HEBERT, between January 3, 2005 and January 12, 2005,** . . . did unlawfully and knowingly obtain or use, or endeavor to obtain or to use, certain property, to-wit: **United States currency** of the value of $5,000 or more, but less than $10,000 lawful currency of the United States of America, the property of **Chester Schmitz** as owner or custodian, with intent to either temporarily or permanently deprive said owner of a right to said property, or a benefit therefrom, or to appropriate said property to the use of **himself** or another person not entitled thereto, in violation of Sections 812.014(1)(a) and (b) and 812.014(2)(c)2, Florida Statutes.

(Ex. A at 3).

With respect to the elements of the crime, the jury was instructed as follows:

Now, under Count 1, which is the grand theft count, to prove the crime of theft, the State must prove the following two elements beyond a reasonable doubt: No. 1, they must prove that Larry Wayne Hebert knowingly and unlawfully obtained, used, endeavored to obtain or endeavored to use the United States currency of Chester Schmitz. And No. 2, that he did so with the intent to either temporarily or permanently deprive Chester Schmitz of his right to his property or benefit from it

  or to appropriate the property of Chester Schmitz to his own use or to the use of any person not entitled to it.

(Ex. B at 183; Ex. A at 10). The jury was also instructed:

> . . . Your verdict must be based upon the evidence and upon the law that's contained in these instructions.
>
> . . . .
>
>   You may find the defendant guilty as charged in the information or guilty of such lesser included crime as the evidence may justify or not guilty. If you return a verdict of guilty, it should be for the highest offense which has been proven beyond a reasonable doubt. If you find that no offense has been proven beyond a reasonable doubt, then of course your verdict must be not guilty.

(Ex. B at 193–95, Ex. A at 20–21).

  The verdict form utilized by the jury read, and was marked, as follows:

> **WE, THE JURY**, find as follows as to the counts charged in the Information:
>
> ### COUNT 1
>
> ____ Guilty of Grand Theft, $5,000 or more, but less than $10,000 as charged.
>
> ✓ Guilty of Grand Theft, $300 or more, but less than $5,000, a lesser included offense.
>
> ____ Guilty of Petit theft, $100 or more, but less than $300, a lesser included offense.
>
> ____ Guilty of Petit Theft, less than $100, a lesser included offense.
>
> ____ Not Guilty.

(Ex. A at 25).

  On direct appeal, Petitioner argued the evidence was "legally insufficient" to sustain his conviction for grand theft, a specific intent crime (Ex. K at 29–33). Petitioner argued the specific intent to commit theft must exist at the time of or prior to the taking of the property at issue (*id.*). He argued that in the context of performing on a contract, some performance, even if it is poor performance, negates any criminal intent (*id.*). He argued the grand theft conviction could have been based upon either the roofing job or the solar panels job; however, as to either job, the evidence was "legally insufficient" on the issue of intent. He argued further that even if the evidence was

legally sufficient as to one of the jobs, his conviction must be set aside, because the jury returned a general verdict, so it was unknown whether the jury based its verdict on the "legally adequate" basis or the "legally inadequate" basis (*id.*).  He cited San Martin v. State, 717 So. 2d 462 (Fla. 1998), in which the Florida Supreme Court applied Griffin and upheld a general guilty verdict for first degree murder, even though the evidence did not support premeditation, because the evidence was sufficient on the alternative theory of felony murder.  *Id.* at 469–70.

The appellate court affirmed Petitioner's conviction on the grand theft count as follows:

> The State presented evidence at trial that purported to support a conviction for grand theft on two theories:  first, that appellant committed grand theft by refusing to refund a homeowner's contractually required deposit for then-uncompleted solar-panel work; and, second, that Hebert arranged for associates to install a defective roof that now must be replaced at considerable expense.  We find the State presented legally sufficient evidence to sustain the conviction, but only with respect to the first theory.  A reasonable juror, considering the evidence in the light most favorable to the State, could have inferred that appellant acted with the requisite specific intent to commit grand theft on the basis of evidence that he withheld the homeowner's deposit when asked to refund it.  *See* § 812.014(1)(a), Fla. Stat. (2004).  Unlike the contractor in Crawford v. State, 453 So.2d 1139, 1140 (Fla. 2d DCA 1984), a case upon which appellant relies, Hebert was unlicensed and thus did not hold a lawful claim to the deposit money.  *See* § 489.128(1), Fla. Stat. (2004) (providing that, "[a]s a matter of public policy, contracts entered into . . . by an unlicensed contractor shall be unenforceable . . . by the unlicensed contractor").  By withholding funds to which he had no legal claim, appellant committed grand theft. § 812.014(1)(a), Fla. Stat. (2004).
>
> In contrast, the State's evidence of specific intent is lacking with respect to the second theory.  Mere evidence of incompetent construction work is not enough to establish specific intent to commit grand theft.  *See generally* Jones v. State, 4 So. 3d 687, 689 (Fla. 1st DCA 2009).  Here, because the State presented legally sufficient evidence with respect to one of the two alternative theories of guilt, we affirm appellant's conviction for grand theft.
>
> "[R]eversal is not warranted" where the jury's verdict "could have rested upon a theory of liability without adequate evidentiary support when there was an alternative theory of guilt for which the evidence was sufficient."  San Martin v. State, 717 So. 2d 462, 470 (Fla. 1998).  As an example of convictions resting upon "a legally inadequate theory," and thus requiring reversal, the court in San Martin referenced a case where one of the State's theories would have led to a conviction violative of the First Amendment, Stromberg v. California, 283 U.S. 359, 51 S. Ct.

> 532, 75 L. Ed. 1117 (1931), and another that could have resulted in a conviction for an offense barred by the applicable statute of limitations, Yates v. United States, 354 U.S. 298, 77 S. Ct. 1064, 1 L. Ed. 2d 1356 (1957). San Martin, 717 So. 2d at 470 n.9 & 10. This court, in Jones, *supra*, reversed, not because of a legally inadequate theory, but because the evidence as to grand theft in that case was "insufficient as a matter of law." 4 So. 3d at 688. Nothing in the Jones opinion indicates that the State presented an alternative theory upon which to sustain the conviction for grand theft.
>
> In Florida, a conviction for theft under section 812.014, Florida Statutes (2008), may be accomplished where the defendant obtained the subject property "by fraud, willful misrepresentation of a future act, or false premise." § 812.012(1)(c), Fla. Stat. (2004). Jones simply stands for the proposition that shoddy, defective, or incomplete construction, without more, will not suffice to show the willfulness, or intent, aspect necessary for grand theft. *See* Hayward v. State, 746 So. 2d 591, 592 (Fla. 2d DCA 1999) (finding circumstantial evidence in that case insufficient to prove "willful misrepresentation of a future act"). Moreover, Florida law is clear that the species of theft charged by the State in this case may, despite the requirement of specific intent, be shown "by circumstantial evidence found in the surrounding circumstances of the event." McGeough v. State, 766 So. 2d 454, 455 (Fla. 4th DCA 2000). Accordingly, although the State's case, based upon installation of a defective roof, has ultimately failed because of insufficient proof, the prosecution did not suffer from a legally inadequate theory.

Hebert, 25 So. 3d 613–14.

Initially, the undersigned concludes that Petitioner's citation to San Martin in his brief to the First DCA was sufficient to alert that court to the federal basis for his claim, because San Martin decided the claim on federal grounds. Therefore, Petitioner satisfied the exhaustion requirement of § 2254(b)(1). *See* Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).

The undersigned must next determine whether Petitioner demonstrated he is entitled to relief under § 2254(d). The record shows that the jury was instructed that to find Petitioner guilty, it must unanimously find beyond a reasonable doubt that he knowingly and unlawfully obtained, used, endeavored to obtain, or endeavored to use Mr. Schmitz's currency, and he did so with the intent to either temporarily or permanently deprive Mr. Schmitz of his right to his currency or benefit from it, or to appropriate Mr. Schmitz's currency to Petitioner's own use or to the use of any person not entitled to it. The jury instruction on grand theft included the disjunctive article "or" within the phrase advising the jury of the four alternative methods of committing grand theft, which was a

correct statement of Florida law. The use of the article once instead of three times in that phrase was not confusing or misleading.

Petitioner failed to show that his grand theft conviction was unconstitutional as in <u>Stromberg</u> or even illegal as in <u>Yates</u>. Petitioner's argument is that because the evidence adduced at trial was insufficient to support a grand theft conviction based upon the "roofing job" theory, the general verdict, permitting conviction based upon the "roofing job" theory or the "solar panels job" theory, required reversal. However, this argument was squarely rejected by the Supreme Court in <u>Griffin</u> and <u>Turner</u>. *See* <u>United States v. Browne</u>, 505 F.3d 1229, 1257–65 (11th Cir. 2007); <u>Clark v. Crosby</u>, 335 F.3d 1303, 1308–10 (11th Cir. 2003); <u>United States v. Stone</u>, 9 F.3d 934, 937–42 (11th Cir. 1993); *see also* <u>Fuller v. Tucker</u>, No. 5:09cv344/RS/EMT, 2012 WL 407059, *Report and Recommendation Adopted by* 2012 WL 398955 (N.D. Fla. Feb. 8, 2012). Indeed, the <u>Griffin</u> Court rejected the same semantical argument Petitioner makes here, that insufficiency of proof is "legal insufficiency" or "legal error" as those terms are used in <u>Yates</u>. Therefore, Petitioner failed to demonstrate that the First DCA's rejection of his due process claim was contrary to or an unreasonable application of clearly established federal law. Accordingly, he is not entitled to federal habeas relief.

IV.   CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is

an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1. That the petition for writ of habeas corpus (doc. 10) be **DENIED**.
2. That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 14th day of February 2012.

/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**